IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
Peoples First Community Bank,

      Plaintiff,

v.                                   CASE NO. 5:12-cv-00398-RS -GRJ

GREG M. BRUDNICKI, JOSEPH
F. CHAPMAN, III, HENRY CLAYTON
FUTRELL, PHILIP W. GRIFFITTS,
JOHN ROBERT MIDDLEMAS, JR.,
RODNEY C. MORRIS, RAYMOND
E. POWELL, and JOHN STEPHEN
WILSON, II,

      Defendants.

_____/

# O R D E R

Pending before the Court are Plaintiff's Motion For Entry of Protective Order Relating to Confidentiality And Non-Disclosure (Doc. 13) and Defendants' Motion to Compel Production of Documents, Strike Or Overrule Objections, And For Sanctions. (Doc. 15.) On June 11, 2013 the Court conducted a telephonic hearing to address the motions. For the reasons discussed on the record, and as summarized below, Plaintiff's Motion for Entry of Protective Order Relating to Confidentiality and Non-Disclosure is due to be granted as detailed in this order, and as set forth in the modified confidentiality and non-disclosure order separately entered by the Court, and Defendant's Motion to Compel Production of Documents, Strike or Overrule Objections And For Sanctions is due to be granted in part and denied in part.

## INTRODUCTION

This action is brought by the Federal Deposit Insurance Corporation, as receiver (FDIC-R") for Peoples First Community Bank, against eight of People's former directors, one of whom was an officer, for negligence and gross negligence relating to the approval of eleven transactions. Procedurally, the FDIC-R has filed a first amended complaint after the Court granted in part and denied in part Defendant's motion to dismiss and ordered the FDIC-R to file an amended complaint. (Doc. 10.) The Defendants have not yet filed a response to the First Amended Complaint. Pursuant to the Court's Scheduling and Mediation Order (Doc. 9) the discovery deadline is October 31, 2013.

The two motions addressed in this order concern the production of documentary information by the FDIC-R. The motion for protective order requests the Court to enter an appropriate confidentiality order to facilitate production of the documents in this case, the majority of which are maintained in electronic format. The motion to compel concerns the form and procedures for production of the information and challenges the protocol for production of the electronically stored information ("ESI") proposed by the FDIC-R. The motions were addressed by the Court at the same time because resolution of the motion for protective order is a prerequisite to production of ESI by the FDIC-R.

## DISCUSSION

### I. *Plaintiff's Motion for Entry of Protective Order*

The lion's share of documentary information in this case has been converted to

ESI.[1]  Defendants have served 94 document requests requesting a wealth of

information. According to the FDIC-R, responsive documents will be voluminous[2] and

include information relating to the identity of bank customers, borrowers, guarantors,

and their personal financial and other private information. Additionally, the materials to

be produced will include regulatory materials prepared by the Office of Thrift

Supervision ("OTS"). As a consequence, the FDIC-R requests the Court to enter a

confidentiality and non-disclosure order to safeguard the personal, financial and

regulatory information. The FDIC-R urges the Court to enter an appropriate

confidentiality and non-disclosure order to expedite the flow of discovery material

because the confidentiality of the personal and financial information of bank customers

will be preserved without the FDIC-R having to engage in a costly – and time

consuming process – of reviewing each document line-by-line to identify sensitive

customer information to be redacted. As to the regulatory materials, the FDIC-R

represents that their proposed confidentiality order includes terms that satisfy state and

federal regulators, which will facilitate the expeditious disclosure of the requested

regulatory information.

---

[1]  At the hearing counsel for the FDIC-R represented that the database of ESI consists of all paper documents and all data records and electronic files of Peoples as of the date Peoples was taken over by the FDIC and closed. After Peoples was closed the FDIC-R collected and processed 2.053 terabytes of ESI from the bank's files, which included 52,000 paper documents converted to ESI and 45 million data records and 1.5 million electronic files. Documents after that date generated by the FDIC and documents generated by Hancock Bank, which purchased various assets of Peoples, are not included in the ESI database collected and prepared by the FDIC-R.

[2]  As an example of the volume of documents that will need to be produced, the FDIC-R represents that it is prepared to produce approximately 61,000 documents in the first phase of discovery

The FDIC-R has provided the Court with a proposed confidentiality and non-disclosure order, substantially similar to orders that have been used in other cases involving the FDIC-R and failed financial institutions.

While Defendants do not seriously challenge the need for some form of a confidentiality order, the Defendants challenge the confidentiality order proposed by the FDIC-R arguing that there is no need for a blanket confidentiality order because the sensitive customer information the FDIC-R seeks to protect relates to loans dating back six to eight years and the bank has not operated since 2009. Further because ten of the eleven loans in question in this case have been the subject of public foreclosure actions, Defendants suggest there are no longer confidentiality concerns about the loans, borrowers, collateral or real estate projects involved in those actions.

Defendants also raise concerns that their ability to interview witnesses and gather information will be hampered because the proposed confidentiality order would require them to have a potential witness sign an agreement to maintain confidentiality. Moreover, Defendants raise concerns that the confidentiality order would impose liability if Defendants discussed information which already is widely available in the public domain. Defendants also understandably complain that the proposed confidentiality order may require their counsel to disclose to the FDIC-R the names of witnesses consulted during their investigation, which would invade the work product privilege by disclosing the strategies of counsel by virtue of identifying the individuals Defendants' counsel contacted.

As to the regulatory information, Defendants assert that disclosure of information relating to the examination and regulation of the bank is no longer a concern because the bank has not operated since December 2009 so there is no risk that disclosure would affect the operation of the Bank, its depositors or other individuals previously involved with the Bank.

Lastly, Defendants complain that the entry of the FDIC-R's proposed confidentiality order would result in the wholesale sealing of documents, thus burdening the Court and running afoul of the principle that court orders authorizing the filing of documents under seal should be narrowly tailored and should be the exception.

Defendants have proposed their own confidentiality order, which Defendants assert is much simpler and adequately addresses issues of confidentiality. One of the sections in Defendants' proposed confidentiality order entitled "Objections to Designation" would authorize a party to lodge an objection at any time to the confidential designation of a document. If the parties do not resolve the objection by agreement the party designating the material as confidential would be required to file a motion with the Court and obtain a ruling on the confidential nature of the document. If the designating party fails to do so within 30 days the confidential designation lapses and the document can then be publicly disclosed. For good reason, the FDIC-R urges the Court not to include this type of provision because it would unnecessarily complicate the process of document production, invite abuse and more likely than not would result in protracted motion practice.

The Court has considered the views of the parties and concludes that the entry of a protective order is necessary and appropriate in this case in order to facilitate the expeditious production of documents and to avoid unnecessary expense and time, which the FDIC-R would incur if it was required to review each document line-by-line to identify and redact sensitive information.

The discovery in this case is asymmetrical. The FDIC-R will be the party producing the vast majority of documents. The relevant documents in this case are not in the possession of Defendants – who have not been involved with People's Bank since at the latest December 2009 when the Bank was taken over by federal regulators – but rather will be contained in the Bank's files concerning the underwriting, investigation and approval of the loans in the eleven transactions  Thus, the burden and expense of document production will fall upon the FDIC-R. Moreover, the concerns about a blanket confidentiality order raised by Defendants can be addressed adequately through appropriate modifications to the confidentiality and non-disclosure order the Court is entering separately in this case.

For example, the Court agrees that the Defendants should not be required to disclose to the FDIC-R upon request – as currently included in section 7 of the FDIC-R's proposed confidentiality order – the identities of any third parties Defendants chooses to consult with and share the documents. While Defendants will be required to have any third parties execute a modified agreement to maintain confidentiality counsel only will be required to maintain the agreements for later use if necessary and will not

be required to provide copies to the FDIC-R upon request.

Further, the entry of the modified confidentiality order by the Court will not, as Defendants suggest, result in wholesale sealing of documents in this case nor does the order constitute a blanket finding by the Court of privilege or confidentiality. Rather, that determination, if necessary, will be reserved for the Court to address in the event a motion to seal is filed. The modified order entered by the Court addresses the procedures for filing documents under seal consistent with Eleventh Circuit precedent[3] and consistent with the principle that wholesale sealing of documents is disfavored by the Courts.

Accordingly, for these reasons, Plaintiff's Motion For Entry of Protective Order Relating to Confidentiality and Non-Disclosure (Doc. 13) is granted to the extent specified in the Confidentiality and Non-Disclosure Order entered separately by the Court this date.

## II.  *Defendants' Motion To Compel*

### A.  *The ESI Protocol*

Defendants request the Court to enter an order requiring the FDIC-R to produce documents responsive to Defendants' First Request for Production, served on April 4, 2013. Defendants also request the Court to award sanctions against the FDIC-R for delaying discovery.

---

[3] *See, e.g. Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1310-15 (11th Cir. 2001).

Defendants' requests for production include 94 separate requests. While the requests are far-reaching in their scope, in general, Defendants seek production of documents relating to the eleven loan transactions at issue and to the allegations in the Complaint. Although Defendants complain that the FDIC-R has not produced any documents at this point the reason no documents have been produced is because a confidentiality and non-disclosure order had not been entered and the parties did not reach agreement on the ESI protocol to be utilized for the production of the documents. Thus, resolution of the ESI protocol is critical to the production of documents.

The parties sharply disagree on the method of production and the ESI protocol. Putting aside the form boilerplate objections inserted in every response by the FDIC-R,[4] the FDIC-R has agreed to produce responsive documents under a proposed protocol. Pursuant to the FDIC-R's proposed protocol (the "ESI Protocol"), the FDIC-R has agreed to produce the documents in a two phase process. The first phase consists of approximately 61,000 pages of documents and includes the following categories of highly relevant documents: (1) credit, underwriting, appraisal and other loan-related files maintained by Peoples Bank; (2) Bank loan and appraisal policies; (3) Board and loan

---

[4] For example, in many of its responses to the requests the FRIC-R has included an objection that the request is "vague, ambiguous, overly broad, unduly burdensome ... " or that the request is "overly broad, unduly burdensome, seeks irrelevant information, and it is not reasonably calculated to lead to the discovery of admissible evidence" and then proceeded to advise that subject to such objections it would produce responsive documents. While the Court recognizes that it may be a common practice to raise boilerplate objections and then produce documents subject to the objection the practice is prohibited by N.D.Fla.Loc.R. 26.2(C)(1), which requires that objections and grounds for objection shall be addressed to the specific request for production, and may not be made generally. Simply "[I]ntoning the 'overly broad and burdensome' litany, without more, does not express a valid objection." *See Mead Corp. v. Riverwood Natural Resources Corp.*, 145 F.R.D. 512, 515 (D. Minn. 1992). Thus, the form boilerplate objections shall not be considered by the Court and are nullity.

committee meeting minutes and packages; (4) pre-failure loan reviews relating to the eleven transactions or the Bank's loan portfolio performed by the Bank or outside auditors; (5) reports of examination performed by the Bank's primary regulator, the OTS from 2002 forward, and key regulatory correspondence relating the reports of examination. Notably, the phase I production constitutes the vast majority of the relevant documents in this case. The only impediment to the production of these documents was the entry of an appropriate confidentiality and non-disclosure order. Moreover, the FDIC-R has agreed to produce the phase I documents at its own expense. Thus, with the Court's entry of the confidentiality and non-disclosure order production of the vast majority of documents has been resolved.

   In phase II of production the FDIC-R has proposed that these documents should be produced pursuant to their proposed ESI Protocol. The documents contained in phase II consist of largely marginal documents from a relevancy perspective and are contained in the voluminous ESI the FDIC-R has collected and copied to its DMS database. Under the FDIC-R's ESI protocol, the parties would collaborate in the process of culling relevant documents from the 2.053 terabytes of ESI on the DMS database by using agreed upon search terms and the names of key Bank employees. After relevant information has been identified the information will be uploaded to a database known as "Relativity." The Defendants will then be given private and secure access to Relativity through the internet and be able to search, review and annotate all ESI on Relativity. Defendants will then be able to identify and request any document

they want produced. The FDIC-R will then produce the requested documents subject to a privilege review and clawback agreement. The FDIC-R proposes to charge $.06 per page for any document Defendants identify from the Relativity database and then request the FDIC-R to produce. Additionally, the FDIC-R proposes to charge the Defendants $225 per gigabyte of data that is uploaded to the Relativity database.

The FDIC-R suggests that using their proposed ESI protocol will expedite discovery, provide the Defendants with better access to the documents and will greatly reduce the enormous costs it would incur if it was required to utilize traditional methods of collection and review of ESI. Further, the ESI protocol proposed by the FDIC-R was not formulated just for this case but has been used successfully in at least a dozen similar lawsuits brought by the FDIC-R against former officers and directors of failed banks.[5]

Defendants object to the ESI protocol primarily on the grounds that the ESI protocol is an inappropriate cost shifting and "responsibility shifting" scheme by the FDIC-R. According to the Defendants, the Federal Rules of Civil Procedure do not require Defendants to pay the FDIC-R to produce documents kept in the ordinary course of business, regardless of whether the documents are obtained from an ESI database or from the hard copy files. Specifically, the Defendants challenge the protocol because under the protocol they will be required to provide appropriate search

---

[5] *See, e.g. FDIC v Johnson, et al.,* No. 2:12-cv-00209-KJD-PAL (D. Nev. Mar. 22, 2013 and *FDIC v. Baker,* No. 1:12-cv-04173-RWS (N.D. Ga. April 18, 2013). Copies of these orders are located at Doc. 19, Exs. C and D.

terms in the first instance, and not the FDIC-R, thus placing on them the burden of locating and identifying relevant documents.

While there are some minor modifications that will be made in the ESI protocol, the Court concludes, for the most part, the ESI protocol proposed by the FDIC-R is appropriate, reasonable and consistent with principles of proportionality when dealing with ESI.

As to cost shifting, Defendants contend that because the ESI is not inaccessible the *Zubulake*[6] factors for determining whether there should be cost shifting do not even come into play. The Court in *Zubulake* held that the usual rules of discovery generally apply when the ESI data are in accessible format but that cost shifting could be considered when data were relatively inaccessible, such as on backup tapes.[7] While the Court in *Zubulake* was focusing upon the issue of cost shifting when dealing with inaccessible ESI, and other courts have required a showing of inaccessibility for cost shifting,[8] other courts have held that Rule 26(c) permits cost shifting as part of enforcing proportionality limits.[9]

---

[6] *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003).

[7] *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 322 (S.D. N.Y. 2003).

[8] *See, e.g. Peskoff v Faber*, 240 F.R.D. 26, 31 (D.D.C. 2007)("[A]ccessible data must be produced at the cost of the producing party; cost shifting does not even become a possibility unless there is first a showing of inaccessibility."); *Pipefitters Local No. 636 Pension Fund v. Mercer Human Res. Consulting, Inc.*, 2007 WL 2080365, at *2 (E.D. Mich. July 19, 2007).

[9] *See, e.g. Thompson v U.S. Dep't of Housing and Urban Dev.*, 219 F.R.D. 93, 98 (D. Md. 2003)(The options available are limited only by the court's own imagination and the quality and quantity of the factual information provided by the parties to be used by the Court in evaluating the Rule 26(b) factors. The court can, for example, shift the cost, in whole or part, of burdensome and expensive Rule 34

There are several reasons that requiring the Defendants to pay *some* of the cost of producing the ESI makes sense, even assuming the DMS database does not fall within the definition of inaccessible ESI. First, this case does not present a classic example of whether there should be cost shifting in producing ESI. In the typical case in which courts have dealt with the issue of cost shifting – including *Zubulake* and *Peskoff* – the lion's share of the expense in producing the ESI concerned the collection and retrieval of the ESI from, for example, backup tapes and other sources which by their very nature made the process extremely expensive and time consuming. That is not the situation in this case. The FDIC-R already has identified, collected and stored all of the information (including all ESI from People's Bank) on the FDIC-R DMS database, set-up and established to make discovery less expensive, less burdensome and more expeditious. Indeed, the FDIC-R represents in the Declaration of Ray Rivard, an information technology specialist in the FDIC's Legal Information Technology Unit, that the FDIC has already incurred more than $624,000 in costs for collection, processing and uploading of the files and documents of People's Bank into the DMS database.[10] Thus, this case does not involve a situation where there will be an enormous cost in collecting and retrieving ESI – the FDIC-R has already saddled the cost of doing this and expended the time to do so. Consequently, the Defendants' suggestion that the ESI protocol advanced by the FDIC-R is a cost-shifting device is not accurate. Indeed,

---

discovery to the requesting party ... ").

[10] Doc. 19, Ex. A, ¶ 13.

the costs the Defendants would be required to pay under the ESI protocol include only a $.06 per page charge for converting a document to a TIFF format and a nominal charge for uploading the data to the Relativity database, which the FDIC-R states should be no more than about $200 per month – a charge that pales in comparison to the hundreds of thousands of dollars that are typically incurred in collecting and retrieving ESI. The $.06 per page charge applicable only to documents Defendants identify on the Relativity database and request the FDIC-R to produce in TIFF format is extremely modest and certainly consistent with the per page cost for photocopying a document, which Defendants would have to pay if the documents were traditional paper documents and not ESI.

Secondly, even assuming the ESI protocol was interpreted to provide cost-shifting, Federal Rule of Civil Procedure 26(b)(2)(C) provides authority for shifting costs as part of the enforcement of proportionality limits. Among the factors the Court may consider in enforcing proportionality limits are: (1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the purposes for which the responding party maintains the requested data; (4) the relative benefit to the parties of obtaining the information; (5) the total cost associated with the production; (6) the relative ability of each party to control costs and its incentive to do so; and (7) the resources available to each party.[11]

---

[11] *Rowe Entertainment, Inc. V. William Morris Agency, Inc.*, 205 F.R.D. 421, 428-29 (S.D. N.Y. 2002, *aff'd,* 53 Fed. R .Serv. 3d 296 (S.D.N.Y. 2002).

The application of these factors strongly supports the ESI protocol proposed by the FDIC-R.  The data contained on the DM database contain emails and other documents which probably fall on the outer boundaries of relevant information. The 61,000 documents – which will be produced by the FDIC-R at no cost – contain the key documents relating to the eleven transactions and the review and approval of these loans. Consequently, the ESI protocol concerns largely marginal documents. Further, the 94 discovery requests are far reaching, broad and do not call for the production of specific targeted documents.  The collection, retrieval and uploading of the Bank's documents into the DM database – a task that was time consuming and cost hundreds of thousands of dollars – was, in the Court's view, an appropriate and reasonable method to attempt to control the costs of discovery in this case and significantly reduce the time and effort the parties would have spent if discovery of ESI had proceeded in the traditional way. Lastly, the costs Defendants will have to pay under the ESI protocol are relatively small – an expense that these Defendants should be able to bear without impacting their ability to mount a vigorous defense to the claims in this case. Accordingly, the Court concludes that taking into account considerations of proportionality of the discovery requests in these circumstances, the ESI protocol proposed by the FDIC-R is reasonable, necessary and wholly appropriate[12] in this case

---

[12] Defendants' objection to the protocol on the grounds that it shifts the burden to the Defendants because they are required to initially propose the search terms is not very persuasive. First, Defendants – former directors and an officer of the Bank – stand in the best position to know the names, titles and other information as to the custodians, the names of files and how the Bank's documents are stored. It thus makes sense that the Bank would be involved in the first instance in formulating appropriate search terms. Secondly, the search process of the DMS database contemplates that the process should be a mutual

subject to minor modifications made by the Court.[13]   The Court will, therefore, append

to this Order the modified ESI Protocol, which shall control the discovery of ESI in this

case.

### B.    *Defendants' Specific Discovery Requests*

There are several issues applicable in general to many of the 94 discovery

requests. These issues include: (1) whether the FDIC-R must produce documents

relating to post-receivership administration, disposition, or sale of the loans and

collateral relevant to the eleven transactions, (2) the relevant time period for the

discovery requests; (3) documents relating to the FDIC-R investigation; and (4)

attorney-client and work privileges to some of the requests.

Turning first to whether the FDIC-R must produce post-receivership documents

the FDIC-R contends that these documents are not subject to discovery because the

FDIC's efforts in marshaling the assets of a failed institution are not subject to challenge

under what the FDIC describes as the "no-duty" rule. *See, e.g. FDIC v Bierman*, 2 F. 3d

1424, 1439-40 (7th Cir. 1993); *FDIC v. Cherry, Bakaert & Holland*, 129 F.R.D. 188, 195-

96 (M.D. Fla. 1989).   Under the no-duty rule the FDIC's decisions as receiver with

respect to the sale of bank's assets are not material. *FDIC v Greenwood*, 719 F. Supp.

---

collaboration and thus the Court expects the parties to work together, notwithstanding which side first proposes the search terms.

[13] For example, paragraph 4 of the ESI protocol limits the search term process to no more than 3 iterations of custodian and search terms and hit reports. While this number is not necessarily unreasonable it does impose an arbitrary limit. The Court therefore has changed the limit on iterations to a "reasonable number." The Court expects the parties to act in good faith and reasonably in implementing the ESI protocol. In the event, however, a dispute develops as to the number of iterations of search terms the parties may present the issue to the Court for resolution.

749, 750-51 (C.D. Ill. 1989). Thus, as a matter of public policy the decisions of the FDIC in liquidating the assets of a failed bank cannot be second guessed whether couched in terms of contributory negligence, proximate causation or mitigation of damages. *Cherry* at 195-96. While the non-duty jurisprudence may apply to challenges to the FDIC's post receivership actions, the Court is now concerned with discovery and not whether these types of defenses will be raised or whether evidence relating to these issues will be admitted at trial. Indeed, at this juncture the Defendants have not yet filed a response to the First Amended Complaint so the Court does not know whether defenses will be raised drawing into question the no-duty rule.

As the Court explained at the hearing, the standard to be applied as to the scope of discovery is whether the evidence is calculated to lead to the discovery of admissible evidence. Included within post-receivership documentation is information concerning the disposition of the loans and collateral of the eleven transactions. Although Defendants may be precluded from challenging the decisions made by the FDIC-R as to when and how these assets were foreclosed and disposed of, the Defendants are entitled to know the ultimate disposition of the loans and assets. There very well may be information included within those files which could bear upon the creditworthiness of the borrowers, the bona-fides of the transactions and the financial solvency of the guarantors, information which arguably could have a bearing upon whether the review and approval of the eleven transactions were prudent, sound and consistent with generally accepted banking practices. Accordingly, the FDIC-R's objection to production

of post receivership documents on the grounds that such information is not discoverable because of the no-duty rule is overruled. The FDIC-R is required to produce post receivership documents relating to the sale and disposition of the loans and collateral in the eleven transactions involved in this case.

With regard to the relevant time period for the scope of discovery the Defendants have requested documentation from throughout the Bank's 26 year history. As a general matter while it seems highly unlikely that any documentation could be relevant that predates when the eleven loans were first brought to the Bank for approval, the FDIC-R has agreed to produce documents dating from 2002, which is three years before the first of the eleven transactions was approved. This period of time is more than reasonable and therefore to the extent the Defendants request production of documents predating 2002 the requests are denied. In the event there are specific and identifiable documents predating 2002 that are essential in this case the Defendants may then make a request for production and if necessary bring the matter to the attention of the Court.

With regard to the FDIC-R's investigation of the Bank the regulatory investigations of the Bank are confidential under 12 C.F.R. § 308.147 and thus documents relating to the investigation do not have to be produced. This applies only to documents that are not contained within the files of People's Bank. To the extent any reports of examination or regulatory reviews are contained within the files of People's Bank these documents must be produced.  With regard to the Material Loss Review,

the document is publicly available and therefore Defendants should be able to obtain a copy. However, as to closing reports and other communications prepared by investigators for the FDIC's counsel these documents are attorney-client privileged and thus protected from compelled disclosure. *Cherry,* 131 F.R.D. at 599. Additionally, any OIG work papers and other investigatory materials not within the possession, custody or control of People's Bank or the FDIC-R are confidential and not subject to production.

At the hearing, the Defendants identified the loss sharing agreement between the FDIC-R and Hancock Bank as part of the documentation Defendants were requesting. The purchase and sale agreement between the FDIC-R and Hancock Bank is a public document, although portions of it are redacted as it relates to specific assets. Because there is a confidentiality agreement in place the FDIC-R will be required to produce an unredacted copy of the purchase and sale agreement and/or loss sharing agreement with Hancock Bank.

Lastly, with regard to requests to produce 28 through 94, the requests are contention requests which recite allegations in the complaint and require the FDIC-R to produce documents referring to the specific allegation. The FDIC-R has agreed to produce all documents that support the factual allegations in the complaint but object to being required to categorize the documents to correspond to each of the 66 requests from number 28 through 94. The Court agrees that requiring the FDIC-R to group and categorize the documents to correspond with each request could implicate the thought processes of counsel and thus invade the work product privilege. *See, Spork v. Peil*,

759 F. 2d 312, 316 (3d Cir. 1985). The FDIC-R will, however, be required to produce documents responsive to these requests consistent with the limits and guidelines on discovery discussed in this order.

As to requests nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27 and 28 through 94 the FDIC-R is required to produce documents responsive to these requests consistent with, as limited by this Order, and where applicable, pursuant to the ESI Protocol approved by the Court.

Accordingly, for these reasons, Defendants' Motion to Compel is granted in part and is denied in part to the extent that the Court has narrowed and limited the scope of production of documents in this order.[14]

## III.  CONCLUSION

In light of the foregoing and upon due consideration, it is **ORDERED**:

1.  Plaintiff's Motion For Entry of Protective Order Relating to Confidentiality And Non-Disclosure (Doc. 13) is **GRANTED**. The Confidentiality and Non-Disclosure Order entered separately by the Court shall control the production of documents and confidential material in this case.

2.  Defendants' Motion to Compel Production of Documents, Strike Or Overrule Objections, And For Sanctions (Doc. 15) is **GRANTED in part and DENIED in part**. The FDIC-R shall produce documents as required by this Order. The FDIC-R must

---

[14] The Defendants' request for sanctions is denied. The FDIC-R's failure to produce documents until an appropriate confidentiality and non-disclosure order was entered and offer to produce ESI pursuant to the ESI protocol was reasonable and justified. Accordingly, there is no basis for the entry of sanctions.

*Case No: 5:12-cv-398-RS -GRJ*

produce the documents identified in Phase I of discovery as soon as possible and not later than ten (10) business days from the date of this Order. The terms of the ESI Protocol appended to this Order are incorporated into this Order and shall control discovery in this case. The parties must comply with the ESI Protocol appended to this Order including the requirement that the Defendants pay the charges identified in the ESI Protocol. The parties are directed to begin implementing the ESI Protocol as soon as possible and are further directed to cooperate with each other in the implementation of and compliance with the ESI Protocol. Although the Court has not included specific deadlines for implementing the ESI Protocol the parties are directed to make all reasonable efforts to do so as expeditiously as possible and in recognition of the fact the discovery deadline is October 31, 2013. The Defendants' request for sanctions is denied.

**DONE AND ORDERED** this 14th day of June 2013.


*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge